IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| DONNA EDEN, an individual; DAVID FEINSTEIN, an individual; and INNERSOURCE UNLIMITED, LTD., an Oregon corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SHARI RAMIREZ, an individual; and HEALING HANDS ENERGY RETREAT LLC, a Nevada limited liability company,<br><br>　　　　　Defendants. | Case No. 1:17-cv-00321-CL<br><br><br><br>REPORT AND RECOMMENDATION |

CLARKE, Magistrate Judge.

Plaintiffs allege Defendants infringed Plaintiffs' registered copyrights, infringed Plaintiffs' common law trademarks, and breached a contract between the parties. Defendants have moved to dismiss Plaintiffs' complaint (#10). For the reasons below, the Court should grant in part and deny in part Defendants' motion.

## FACTUAL BACKGROUND

In the late 1990s, Plaintiffs Donna Eden ("Eden") and David Feinstein ("Feinstein") coauthored "Energy Medicine," a book, which, as its name suggests, is devoted to the art of energy healing. On February 24, 1999, Plaintiffs obtained a federal copyright registration number for the book. The book is copyrighted as a literary work. In 2007, Plaintiffs coauthored an updated version of their book; the work is entitled "Energy Medicine: Balancing Your Body's Energies for Optimal Health, Joy, and Vitality." On November 21, 2008, Plaintiffs obtained a copyright registration number for this book as well. This book is also copyrighted as a literary work.

As Plaintiffs explain, "From 2006 through 2015, [they] invested thousands of dollars and months of time in developing a Certification Program in which they trained personnel to teach" the art of energy healing. First Am. Compl. ¶ 19. According to Plaintiffs, the protocols, or methods, Plaintiffs developed, as well as the certification program, use "explanations, teaching, techniques, graphics, and demonstrations that are subject to copyright protection," as they are original ideas set forth in their "Energy Medicine" books. First Am. Compl. ¶ 19. In addition, practitioners trained through Plaintiffs' certification program receive handouts, which are entitled "Eden Energy Medicine Certification Program." These handouts "provide[] detailed information about the protocols" and expand on the methods taught in Plaintiffs' books. First Am. Compl. ¶ 19. Plaintiffs' federal copyright application for the handouts are pending.

Plaintiffs also allege that in creating their books and handouts, they "conceived a number of service marks," which include the terms "The Black Pearl Sanctuary," "The Triple Warmer Smoothie," and "The Calming Triple Warmer." First Am. Compl. ¶ 21. They contend the service marks have been continuously used since their inception both in Oregon and in interstate commerce, vesting Plaintiffs with common law trademark rights in the service marks.

Defendant Shari Ramirez ("Ramirez") registered for and completed Plaintiffs' certification program. On April 25, 2014, Ramirez entered into a contract with Plaintiffs promising "never to teach or instruct any of the advanced protocols I have learned at the Advanced Practitioner program, except by invitation from Innersource or in Innersource-approved formants. This includes the sharing of handouts and/or DVDs of these classes." First Am. Compl. ¶ 22. Innersource Unlimited, Ltd., is owned and operated by Eden and Feinstein.

Despite this contract, Plaintiffs allege Ramirez "has in fact taught the advanced protocols" mentioned in the contract without Innsersoure's invitation and without using Innersource-approved formats. First Am. Compl. ¶ 22. Moreover, as part of Ramirez's training, she received copies of Plaintiffs' copyrighted works, and Plaintiffs allege Ramirez has used the handouts and DVDs in her own training program without previously obtaining permission to do so, also a violation of the contract.

Finally, Plaintiffs contend that over the past two years or perhaps longer, Ramirez authored two books, "Energy Medicine Techniques, Volume 1," and "Energy Medicine Techniques, Volume 2," substantial portions of which "were largely copied from [Plaintiffs'] Works and are substantially similar to [Plaintiffs'] Works." First Am. Compl. ¶ 23. Indeed, as Plaintiffs point out, the cover page of the first volume of Ramirez's work explicitly states that "All material is derived from Donna Eden, her 'Energy Medicine' book, the EEM Foundations

Program, and the EEM Certification Program."[1] First Am. Compl. ¶ 23. Likewise, the second volume states, "The material in this book is sourced from Donna Eden's work with Energy Medicine." First Am. Compl. ¶ 23. Despite thanking Eden for her work, Plaintiffs contend they never granted Ramirez permission "to copy the Works." First Am. Compl. ¶ 24. In addition, they allege Ramirez has been distributing her books to students enrolled in her seminars and programs; the individuals "whom Ramirez has been marketing her seminars and programs [to] are the same types of individuals to whom Plaintiffs have been marketing their own Certification Programs." First Am. Compl. ¶ 27. Moreover, Plaintiffs assert that Ramirez began performing consulting and teaching work using Plaintiffs' service marks and has used the service marks in her books and in materials used in her programs. Thus, Plaintiffs maintain their business has been injured as a result of Ramirez's infringement and breach of contract. Accordingly, they bring claims for copyright infringement, common law trademark infringement, and breach of contract. Defendants move to dismiss each claim.

## STANDARD

Pursuant to Rule 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

---

[1] EEM Foundations Program and EEM Certification Program refer to Plaintiffs' certification program in energy healing.

Dismissal under Rule 12(b)(6) is proper "if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (internal citation omitted).

## DISCUSSION

### I. Copyright infringement

Defendants assert that Plaintiffs' copyright-infringement claim necessarily fails because "the only elements of plaintiffs' work that are protectable under copyright law are not present in defendants' works." Memo. in Supp. of Mot. to Dismiss, at 1. Rather, Defendants argue, both parties use "terms to describe techniques used by practitioners in the 'healing arts,'" which is non-copyrightable. Memo. in Supp. of Mot. to Dismiss, at 1.

To prove copyright infringement, a plaintiff must demonstrate "(1) ownership of the copyright, (2) access to the copyrighted work, and (3) substantial similarity between the copyrighted work and the defendant's work." *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984). Here, the only issue is whether Plaintiffs' and Defendants' work are substantially similar. Indeed, there is no dispute that Plaintiffs own the copyrights—nor can there be: Plaintiffs attached proof of their ownership to the complaint. Additionally, Defendants do not contest

Ramirez had access to the copyrighted work; in fact, Ramirez states as much in her books, attributing her work to the copyrighted material at issue in this case.

The Ninth Circuit employs a two-part analysis to determine whether works are substantially similar, an extrinsic and intrinsic test. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "The 'extrinsic test' is an objective comparison of specific expressive elements" and "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works." *Id.*; *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (internal quotation and citation omitted). By contrast, "[t]he 'intrinsic test' is a subjective comparison that focuses on 'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.'" *Cavalier*, 297 F.3d at 822 (quoting *Kouf*, 16 F.3d at 1045). Courts "must take care to inquire only whether 'the *protectable elements, standing alone,* are substantially similar.'" *Cavalier*, 297 F.3d at 822 (quoting *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996)) (emphasis in original). Consequently, when a court applies the extrinsic test, it filters out and disregards "the non-protectible [sic] elements in making its substantial similarity determination." *Cavalier*, 297 F.3d at 822.

"Copyright law only protects expression of ideas, not the ideas themselves." *Id.* at 823 (citing 17 U.S.C. § 102(b)). Put another way, facts are not copyrightable, but compilations of facts are, so long as "it features an original selection or arrangement of facts"; however, "the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 350-51 (1991).

In *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032 (9th Cir. 2015), the Ninth Circuit held that a yoga instructor's twenty-six yoga poses and two breathing exercises were ideas, not expressions of the ideas, and therefore were not subject to copyright protection. In that case, as stated, the yoga instructor developed twenty-six poses and two breathing exercises which he arranged in a particular order; he called it the "Sequence." *Id.* at 1035. In 1979, the yoga instructor published a book that included "descriptions, photographs, and drawings of" the twenty-six poses and two breathing exercises. *Id.* He registered the book with the U.S. Copyright Office and registered a "compilation of exercises" found in the book "using a supplementary registration form that referenced back to the 1979 book." *Id.* at 1035-36. Nearly twenty years later, the yoga instructor introduced a training course, and in 2002 and 2005, the founders of the defendant company enrolled and completed his yoga teacher training course. *Id.* at 1036.

The defendant acknowledged that its "hot yoga" program included twenty-six postures and two breathing exercises done for the same length of time and at the same temperature as the Sequence developed by the yoga instructor. *Id.* Accordingly, the yoga instructor and his company filed suit alleging the defendant infringed the instructor's copyrighted works. *Id.* The parties settled all claims except for the claim that the defendant infringed the yoga instructor's copyright of his Sequence. *Id.*

In arguing for protection, the yoga instructor himself described the Sequence as "a 'system' or a 'method,'" "[a]n essential element" of which was "the order in which the yoga poses and breathing exercises [were] arranged." *Id.* at 1038-39. Finding for the defendant, the court explained that "the copyright for a work describing how to perform a process does not extend to the process itself." *Id.* at 1037-38. And the yoga instructor was attempting "to secure

copyright protection for a healing art: a system [or a process] designed to yield physical benefits and a sense of well-being." *Id.* at 1039. The court went on to state:

> As the Supreme Court explained in *Baker*, "Certain mixtures are found to be of great value in the healing art. If the discoverer writes and publishes a book on the subject (as regular physicians generally do), he gains no exclusive right to the manufacture and sale of the medicine; he gives that to the public." Thus, for example, the copyright for a book describing how to perform a complicated surgery does not give the holder the exclusive right to perform the surgery. Like the series of movements a surgeon makes, the Sequence is, as Choudhury tells readers, a method designed to "cure, heal, or at least alleviate" physical injuries and illness.

*Id.* (internal citation omitted).

Next, the yoga instructor argued that the Sequence was copyrightable as a compilation; specifically, he argued that the Sequence was his own "'selection, coordination, and arrangement' of twenty-six poses and two breathing exercises. . . ." *Id.* at 1041. The court rejected this argument as well, stating that a "'compilation' is 'a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.'" *Id.* (internal citation omitted). Yet the yoga instructor's Sequence, though it may be made up of many "constituent" parts, was itself not a compilation but a system, rendering it ineligible for copyright protection. *Id.* This was true, the court stated, even though the instructor argued he could have chosen from different postures or arrangements in developing his Sequence. *Id.* at 1041-42. Indeed, the Ninth Circuit compared the instructor's Sequence to a recipe, which is also ineligible for protection: "a cake recipe could be viewed as a 'compilation' of carefully arranged and selected steps . . . yet the recipe would remain, in most instances, a process that is not eligible for copyright protection." *Id.* at 1042 (internal citation omitted).

On the surface, the parallels between *Bikram's Yoga College* and the present case are complementary. Here, as in *Bikram's Yoga College*, Plaintiffs created a training program that produces certified practitioners. In addition, Ramirez, like the defendant in *Bikram's Yoga College*, is alleged to have taught the advanced protocols developed by Plaintiffs without their permission. Moreover, much like the defendant in *Bikram's Yoga College*, who acknowledged that its program included the identical twenty-six postures and two breathing exercises as the Sequence, Ramirez authored two books that contain substantial portions of material copied from, or substantially similar to, Plaintiffs' copyrighted works.

Next, as Plaintiffs state, "Ms. Eden believed that the principles and techniques she had developed could help others with serious illnesses," prompting her to begin teaching "the concepts and methods" and then to "committ[ing] her approach to writing, resulting in her book, *Energy Medicine*." Pl.'s Resp. to Mot. to Dismiss, at 1-2. Hence, it appears that, as in *Bikram's Yoga College*, Plaintiffs are attempting "to secure copyright protection for a healing art: a system [or a process] designed to yield physical benefits and a sense of well-being." *Bikram's Yoga College*, 803 F.3d at 1039.

As Plaintiffs correctly point out, however, in *Bikram's Yoga College*, the yoga instructor was attempting to argue that the arrangement of postures and breathing exercises was itself copyrightable. *Id.* at 1040. By contrast, Plaintiffs are not seeking to copyright their treatment methods or the process in which they arrange them but instead are seeking to copyright their description of how to perform the process; indeed, they are challenging Defendants' copying of "the words that were used to describe their treatment methods." Pl.'s Resp. to Mot. to Dismiss, at 11. This distinction is key. In *Bikram's Yoga College*, the court noted that the description of how

a process is performed is copyrightable but the process itself is not. 803 F.3d at 1038. In fact, as the Supreme Court stated in *Baker v. Selden*, 101 U.S. 99, 105 (1879):

> The description of the art in a book, though entitled to the benefit of copyright, lays no foundation for an exclusive claim to the art itself. The object of the one is explanation; the object of the other is use. The former may be secured by copyright. The latter can only be secured, if it can be secured at all, by letters-patent.

Hence, the description of Plaintiffs' treatment methods is copyrightable.

Defendants contend, however, that Plaintiffs are simply breaking down an uncopyrightable process into multiple steps and labeling it a compilation, which the *Bikram's Yoga College* court expressly rejected. Indeed, in *Bikram's Yoga College*, the court held that the yoga instructor could not copyright his process simply by arranging it in a particular manner, just as "[t]he watchmaking treatise's author could not claim a copyright in the process of making a watch . . . by breaking down the process into multiple steps and labeling it a 'compilation.'" 803 F.3d at 1042.

Defendants' analogy is unavailing. In *Bikram's Yoga College*, the yoga instructor was attempting to copyright, not a treatise describing his process, but the process itself, by arguing that the specific sequence in which he performed the process rendered it copyrightable as a compilation. Yet, as the court explained in its watchmaking analogy, simply breaking a process down into multiple steps does not somehow transform the physical activity into an expression; at its core, one continues to seek protection in the actual physical activity, rather than a description of the activity.

Here, however, Plaintiffs seek to copyright their description of the principles and techniques that they have developed, not the physical treatment methods themselves, which they readily acknowledge cannot be copyrighted, regardless of how uniquely arranged they may be.

Accordingly, then, Plaintiffs' works, which are "description[s] of [an] art in [] book[s] . . . may be secured by copyright." *Baker*, 101 U.S. at 105.

Defendants also argue that Ramirez has simply copied the names or short titles of various healing methods and names or short titles are not copyrightable. "[N]ames, titles, and slogans" are indeed not subject to copyright protection. 37 C.F.R. § 202.1(a). But, here, Defendants have not only copied names, titles, and slogans; rather, a litany of phrases and clauses have been lifted from Plaintiffs' works. *See* Pl.'s Exs. E & F. In *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985), the Supreme Court noted that the taking of just three hundred words from the President's memoirs constituted infringement because the words were "essentially the heart of the book."

Here, Plaintiffs attached a comparison of the parties' works to their complaint, and these exhibits demonstrably show that distinctive phrases—not just names, titles, and slogans—match verbatim or are paraphrased. Moreover, the phrases copied appear to be the very substance of their works—*i.e.*, Plaintiffs' descriptions of the protocols and healing methods they developed. *See* Pl.'s Exs. E & F. In other words, a plausible interpretation of the copied work suggests that, as in *Harper*, the very core of Plaintiffs' expressive work was lifted. Accordingly, Defendants' argument that only uncopyrightable names, titles, and slogans were lifted fails. In sum, then, Defendants' motion to dismiss Plaintiffs' copyright-infringement claim should be dismissed.

## II. Trademark infringement

Defendants contend Plaintiffs' claim for common law trademark infringement should be dismissed "because plaintiff [sic] has failed to allege facts showing the phrases at issue . . . are used by plaintiffs or defendants in a 'trademark' sense." Defs' Mem. in Supp. of Mot. to Dismiss, at 23. Specifically, Defendants argue that the phrases Plaintiffs claim are trademarked

are "used merely to describe techniques or protocols from the healing arts. They are not used as source identifiers specific to plaintiffs[.]"Defs' Mem. in Supp. of Their Mot. to Dismiss, at 24.

To state a claim for common law trademark infringement, a plaintiff must sufficiently allege "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." *Dep't of Parks and Rec. for State of Cal. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985)).

Plaintiffs have sufficiently pleaded the first element of a claim for common law trademark infringement, as Plaintiffs have set forth facts plausibly showing that they have a protectable ownership interest in the marks at issue. A protectable ownership interest in a mark is demonstrated through priority of use. *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Use "typically occurs when a mark is used in conjunction with the actual sale of goods or services," which "creates an association among consumers between the mark and the mark's owner." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999).

Here, as they state in their First Amended Complaint, "Plaintiffs have used each of the Service Marks . . . continuously and prominently within the State of Oregon, in other states and in interstate commerce since at least 2008 in their ENERGY MEDICINE books and/or the Handouts and in connection with their Certification Programs." First Am. Compl. ¶ 37. Plaintiffs allege that because of this continuous use, "members of the public" recognize that the marks at issue "originate[] with and represent the goodwill of Plaintiffs." First Am. Compl. ¶ 37. Hence, Plaintiffs have adequately pleaded that they use the marks at issue in conjunction with the actual

sale of both goods—their books and handouts—*and* services—their certification programs. Additionally, they have alleged that because of the continuous use of these marks since 2008, consumers now associate the marks with Plaintiffs. Thus, Plaintiffs have plausibly pleaded the first element, a protectable ownership interest in the marks.

Plaintiffs have not, however, set forth sufficient facts to plausibly suggest that Defendants' use of the marks is likely to cause consumer confusion. A plaintiff can show consumer confusion either by (1) forward confusion or (2) reverse confusion. *JL Beverage Co., LLC. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citing *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005)). "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." *Surfvivor Media, Inc.*, 406 F.3d at 630 (internal citation omitted). "[R]everse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Id.* (internal citation omitted)

Plaintiffs' First Amended Complaint states that "Ramirez began using each and every one of the Service Marks" in her consultation and teaching services, as well as in her published books and the materials she used in her seminars and programs. First Am. Compl. ¶ 38. Because "Ramirez has been marketing her seminars and programs [to] the same types of individuals to whom Plaintiffs have been marketing their own Certification Programs," Plaintiffs contend that "their business has been injured. . . ." First Am. Compl. ¶ 27.

Nowhere in Plaintiffs' First Amended Complaint, however, do they suggest that the reason their business has suffered is because consumers are confusing Ramirez's junior mark with their senior mark, either via forward or reverse confusion. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff is

obligated "to provide the grounds of his entitlement to relief. . . ." *Twombly*, 550 U.S. at 555 (internal citation and quotation omitted). And, here, that requires Plaintiffs to demonstrate that Ramirez's alleged use if their marks has caused consumer confusion, as this is a necessary element of a trademark-infringement claim. Their conclusory claim that their business has been injured is, without more, insufficient; indeed, Plaintiffs attribute the injury to multiple causes, including Ramirez's alleged copyright infringement and her alleged breach of contract, and they do not articulate *how* their business has been injured—*i.e.*, because of consumer confusion or because of increased competition. Hence, the Court has no way of discerning the reasons for Plaintiffs' business's injury and whether consumer confusion is one of those reasons.

Consumer confusion is a necessary element of a claim for common law trademark infringement. *Levi Strauss*, 778 F.2d at 1354. Without demonstrating consumer confusion, Plaintiffs have not demonstrated that they are entitled to relief. Accordingly, their trademark claim fails pursuant to Rule 12(b)(6), and the Court recommends dismissing Plaintiffs' claim for common law trademark infringement; however, it recommends doing so without prejudice, since Plaintiffs can cure this defect through additional facts. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that leave to amend should be granted even when no request has been made unless the court determines the pleading could not possibly be cured by the allegation of other facts).

### III. Breach of contract

Finally, Defendants move to dismiss Plaintiffs' breach-of-contract claim. Defendants contend Plaintiffs have failed to set forth facts supporting their allegations for a breach of contract. In particular, they contend that Plaintiffs' "allegations of breach are insufficient because

they simply recite the terms of the contract in a conclusory way." Mem. in Supp. of Defs.' Mot. to Dismiss, at 25.

"To state a claim for breach of contract under Oregon law," which governs the terms of this contract, "a 'plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.'" *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1029 (D. Or. 2012) (quoting *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996)). Here, Plaintiffs specifically allege the existence of a contract between the parties; in fact, they even provide the date the contract was entered into and have attached the contract to their complaint. Second, Plaintiffs indicate Ramirez received the certification training she bargained for; thus, Plaintiffs have sufficiently suggested their performance and lack of breach. Finally, Plaintiffs allege facts plausibly suggesting Ramirez's breach of the contract: "Shari Ramirez has breached the Agreement by teaching the protocols to others in competition with Plaintiffs without permission from Plaintiffs." First Am. Compl. ¶ 44. Plaintiffs further contend this breach has injured their business, thus causing them to suffer damages. Accordingly, by alleging each element of a breach-of-contract claim, Plaintiffs' complaint "allows the court to draw the reasonable inference that [Ramirez] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citation omitted). This is all that Rule 12(b)(6) requires. Defendants' motion to dismiss this claim should therefore be denied.

## **RECOMMENDATION**

For the foregoing reasons, Defendants' motion to dismiss (#10) should be GRANTED in part and DENIED in part.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

It is so ORDERED and DATED this ____6____ day of September, 2017.

_____
MARK D. CLARKE
United States Magistrate Judge